WASHINGTON,
March,
1834.

R. & R. RICHARDSON, JR. *vs.* ROYALTON AND WOODSTOCK TURNPIKE COMPANY.

> All facts upon which any reasonable presumption or inference can be founded as to the truth or falsity of the issue, are admissible in evidence.
>
> An act of incorporation which subjects the turnpike company to answer for damages occasioned by their *neglect* of any bridge, is to be construed to make them liable to the same extent that towns are liable under the general statute for damages arising from *insufficiency and want of repairs* in bridges.
>
> The degree of strength required for a bridge, depends upon the amount and variety of business and travel done on the road.
>
> In a grazing country like Vermont, a bridge should be sufficient to sustain a drove of cattle, if passed over with common care and prudence.
>
> It is no certain test of the sufficiency of a bridge that it will sustain the heaviest loaded teams.
>
> A right defectively alleged is aided by verdict.
>
> Where the plaintiff declared upon an act of incorporation, relating some part of it correctly, which was given in evidence to the jury, after verdict on motion in arrest, it will be intended that all the requisites to a recovery, were shown.

Action on the case for damages, occasioned for insufficiency of defendant's bridge. Plea, general issue.

The plaintiffs introduced evidence tending to prove that in the month of November, A. D. 1831, they were in the town of Royalton with a drove of fat cattle for the Brighton market, consisting of about one hundred head, principally oxen. That in passing the defendant's bridge, over White River, with said drove of cattle, the southern reach of the bridge fell with said cattle and precipitated eighteen or twenty head into the river, and that seven were much bruised and wounded, so that it became necessary to kill them. The plaintiffs gave further evidence tending to prove that the bridge, or the reach which fell, was erected about three years before the accident happened—that the string pieces were hemlock—that the reach was sixty-four feet long from the pier to the abutment, and that the bed pier and one or two of the projectors under the string pieces were some decayed ; and that the middle projec-

WASHINGTON,
March,
1834.

Richardson&al.
vs.
W. & R. Turn-
pike Company.

tor broke off when the bridge fell—that all the string pieces were broken off near the middle, except one, which was brok-en within ten or twelve feet of the end. The plaintiffs further offered to prove that, in 1831, the defendants erected the two northern reaches of said bridge new, as the old ones had stood about nine years, and that the new reaches thus erected, were stronger than the reach which fell with the cattle. To the admission of this evidence the counsel of defendants objected, but the objection was overruled by the court and the evidence admitted ; to which the defendant excepted.

The defendants adduced evidence tending to prove that the reach of the bridge, was built new, about three years before the injury happened—that it was erected with great care and caution, by a skilful workman—that the timber of which the reach was constructed, was sound when put into the bridge, and of a proper size for that purpose, and that when the bridge fell with the plaintiffs's cattle, the timber of the same was all sound and in no part decayed—that the string pieces were broken off very near the middle—that the bridge was at the time it fell, sufficient to sustain the heaviest loaded teams that pass through the country, and that it was in good repair. The defend-ants further introduced evidence, tending to prove that between thirty and forty head of the cattle were upon the reach when it fell, and fell with it into the river below, and that the drove of cattle were whipped up by a number of boys from Royal-ton village, who assisted the drivers, and were driven by said boys with great force on to the bridge, and hurried along as fast as they could be, on to the southern reach of the bridge, when it fell by the unreasonable weight of cattle upon it. Defendants also gave evidence tending prove that the drivers of the cattle called out to the boys to whip up and come on as fast as possible.

The defendants requested the court to charge the jury as follows, to wit :

1. That it is the duty of the corporation to build and sus-tain such a bridge, as is sufficient to carry over the largest loaded teams usually passing the road, and are bound to build no stronger.

2. If the jury find the bridge was of that strength, the plaintiff cannot recover.

3. If the jury find the bridge was not of that strength, yet;

WASHINGTON,
*March,*
1834.

Richardson&al.
*vs.*
W.&R.Turn-
pike Company.

if they find the drivers of the cattle conducted imprudently in driving on the cattle, and that their imprudence contributed to the injury, the plaintiffs cannot recover.

4. If the cattle were so driven on to the bridge, or so suffered to go on, that there was more weight on a single length than the weight of the largest teams used in the country, it was imprudence in the drivers, and the plaintiffs cannot recover.

5. If more weight of cattle were driven or suffered to go on to that length of the bridge which was broken, than the weight of our largest loaded teams usual in the country, and the bridge broke, the plaintiffs cannot recover, whether the bridge was sufficient for teams or not.

In reference to the several requests aforesaid, the court charged the jury as follows:

That the act of incorporation which subjects the defendants to answer for damages occasioned by their *neglect of any bridge,* is to receive a construction which shall render them liable to the same extent as the several towns are made liable, under the general statute for damages, arising from the *insufficiency and want of repairs* of their public bridges: —That their inquiries embraced two questions:

1. As to the condition of the bridge at the time of the injury complained of—and

2. As to the prudence or imprudence of the plaintiffs. That upon the first point, the degree of strength to be required for the bridge should depend upon the amount and variety of business and travel on the road, and as a part of that business and travel consisted in driving droves of cattle, for which the defendants were entitled to receive toll and had received it in this instance, the bridge should be made and kept in a condition to answer the purposes of that business : That the test of strength and sufficiency insisted on by the defendants, viz : an ability to sustain the heaviest loaded teams which usually travel on our public roads, was not the only one to be applied in this instance, but that to excuse the defendants, the bridge must have been in a condition to sustain a drove of cattle— provided they should be passed over it in the manner which is usual on such occasions with drivers of ordinary care, skill and prudence : That upon the second point, it was their duty to consider and weigh all the evidence as to the manner in which the cattle were driven upon the bridge, and if they found

that they were driven on in greater huddle and number, or with more speed than is usually permitted by drivers of common skill and prudence, and that by this means the loss happened, the plaintiffs could not recover. But otherwise, if they found the bridge to be insufficient, according to the rule above laid down, they would return their verdict for plaintiffs. Verdict and judgment for the plaintiffs.

To the refusal of the court to charge as above requested, and to the charge as given, on the subject of said requests, the defendants excepted. Exceptions allowed and certified to this court.

The defendants also made a motion in arrest, founded on defects in the declaration which was, so far as necessary to be inserted as follows :

"That the legislature of the state of Vermont, at their session holden at Middlebury, in October, A. D. 1800, on the 7th day of November, 1800, passed an act, entitled "An act establishing a corporation by the name of *Royalton and Woodstock Turnpike Company,*" by the first section of which, it is enacted, "that Charles Marsh, Jacob Smith, William Leaverett, Levi Moore, Zebulon Lyon, and Stephen Jacobs and their heirs and assigns, be and they hereby are constituted a corporation by the name of *Royalton and Woodstock Turnpike Company*, and shall, by that name, sue and be sued, and may have a common seal, and shall enjoy all the privileges and powers that are by law incident to corporations, for the purpose of laying out and making a turnpike road, from Royalton meeting house to Woodstock court house, in the county of Windsor, in such place or places, as the said corporation shall choose." And the same act contained this other enactment or provision : " And the said corporation shall be liable to pay all damages which may happen to any persons, from whom toll is demandable, or any other persons, from neglect of any bridge, or want of repairs in said road." And the said company having made a road, as in and by said act empowered to do, the same road, on the fifth day of November, A. D. 1831, was, and for a long time before had been, by said company's consent and act, an open road for the public travel, and the same was at that time, and for a long time had been used by said company's consent, as a public turnpike road, whereon all the good citizens of the state and others, did and might travel, pass and repass with their teams, cattle and carriages, to and

WASHINGTON,
March,
1834.

Richardson&al.
vs.
W & R. Turn-
pike Company.
from said Royalton meeting house to Woodstock court house, as aforesaid, and at said time said company demanded and received toll from persons traveling and passing on their, the said company's turnpike road.

*Upham & Keith for defendants.*—This case comes before the court upon a motion in arrest of judgment, and upon a bill of exceptions.

1. As to the motion in arrest: The declaration is defective.—1st, Because it is not alleged that the persons mentioned in the act of incorporation accepted of the same, organized as a corporation, and constructed and opened the road according to the provisions of the act.—And 2d, Because it is not alleged that it was the duty of the defendants to sustain and keep said bridge in repair.

It is a well-settled rule in pleading, that every material fact, which constitutes the ground of the plaintiff's action, must be alleged in his declaration.—*Kingsley* vs. *Bell et al.* 9 Mass. 198.—1 Chit. Pl. 371.—12 East. 90.

It was therefore necessary for the plaintiffs to allege in their declaration, that the persons incorporated organized under the act, and constructed and opened the road, and that it was their duty to keep it in repair.—*Goshen and Sharon Turnpike Co.* vs. *Sears,* 7 Con. R. 86.

2. As to the exceptions: We insist the county court erred in admitting the plaintiffs to prove that the defendants, in 1831, erected the two northern reaches of said bridge new, and that the new reaches then erected were stronger than the reach which fell with the cattle.—1 Stark. Ev. 387—2 do. do. 381 –2.—Swift's Ev. 153.

3. The court below should have charged the jury as requested by the counsel for the defendants.

Turnpike corporations, like towns, we admit, are answerable for any special damage which shall happen to any person or persons, his or their teams or carriages, by means of any insufficiency or want of repairs in their roads and bridges. We insist, however, that the legal measure of duty, as to the sufficiency of bridges, is, that they should be sufficient and safe for loaded teams of the heaviest kind used in the country. To go further, and require bridges sufficient to sustain buildings when drawn over them, and whole droves of cattle, would be both

unreasonable and unjust.—*Vide* decision of supreme court in this case in 1833.

In the construction and preservation of roads and bridges, the law only requires the exercise of ordinary care and diligence.—*Townshend* vs. *The Susquehannah Turnpike Co.,* 6 John. R. 90.

In the case at bar, the plaintiffs were bound to prove in the court below, that the injury complained of was occasioned by the *negligence* of the defendants in not keeping their bridge in repair, and without any fault on the part of the plaintiffs. For it cannot be presumed that the legislature intended to provide a remedy for damages sustained by any man through his own wrong.—1 Swift's Dig. 552–3.—*Noyes* vs. *Morristown,* 1 Vt. R. 353.—*Wood* vs. *Waterville,* 4 Mass. 422.—*Butterfield* vs. *Forrester,* 11 East. 60.—*Farnum* vs. *Concord,* 2 N. H. Rep. 392.—*Flower* vs. *Adam,* 2 Taunt. 314.—*Thompson* vs. *Bridgewater,* 7 Pick. 188.—*Goshen and Sharon Turnpike Co.* vs. *Sears,* 7 Conn. 86.—*Vide* Charter of Company, Laws of 1800, p. 60.

*Smith & Peck, contra.*—The defendants' motion in arrest is founded on two objections to the declaration.

1. It is said the declaration contains no allegation that the defendants accepted the charter, or were duly organized according to its provisions.

These facts are substantially averred, for it is alleged that the defendants "*made a road as in and by said act empowered to do,*"—"that it was *used by their consent as a public highway,* and that *they exacted and received toll from travellers passing on their said road.*" This averment is sufficiently certain. Were it otherwise, the defect is cured by verdict.— (1 Sand. 228.—15 John. R. 250. & 254.—6 Con. R. 176.) And if the allegation *was entirely omitted,* the declaration would be good.—(2 Swift's Dig. 572, *Williams* vs. *The* ——— *Turnpike Co.* cited in 7 Con. R. 93, and *The Goshen and Sharon Turnpike Co.* vs. *Sears,* 7 Con. R. 93.)

2. It is further objected, that it is not alleged to have been the duty of the defendants to keep the bridge in repair. The declaration recites a provision of the act of incorporation, which makes the defendants liable for a *neglect* or *insufficiency* of any bridge, &c.

It is then alleged, that in consequence of the insufficiency of

WASHINGTON, the bridge in question, the plaintiffs sustained the injury. This
  *March,*
  1834.   is sufficient.   And if the allegation was omitted, it would be
────────── aided by the verdict.—(16 Mass. R. 94—17 do. 229.—6 Pick.
Richardson&al. 
  *vs.*    409.—1 East. 203.—7 T. R. 422.—15 East. 290.—1 John.
W & R Turn-
pike Company. R. 276—2 do. 571.—1 Chit. Pl. 359.)

Secondly, as to the exceptions: The defendants contend
that evidence was improperly admitted to show that the two
reaches of the bridge, erected in 1831, were much stronger
than the one that fell with the plaintiffs' cattle.   To this we
answer, 1st, That this evidence was admissible as having a
tendency to show that the defendants considered that the aug-
mentation of business, and the necessities of the community re-
quired a stronger bridge than the one first erected.  2dly, That
the testimony was in no wise important, and could not have had
much, if any, weight with the jury, and a new trial, for this
cause, ought not to be granted.

The defendants further insist, that the court erred in not
charging the jury as requested.  The charge embraces two prop-
ositions, to which the attention of the jury was directed by the
court.   They were instructed that it was the defendants' duty
to make and keep in repair such a bridge as would not only
support the heaviest loaded teams, but also such an one as
would support and carry over in safety, droves of cattle, when
driven with ordinary care and prudence.   That a bridge which
would sustain the heaviest teams, was *one test* of the defend-
ant's duty ; but not the only one.   Can any one say, or rather
believe, that this is not a safe, salutary and correct rule ? Why
measure the defendants' duty by the sufficiency of the bridge to
support the heaviest teams ?  It is clear that this should not be
the *only* test ; for the driving of cattle in droves has become as
much the business of the country as that of transporting pro-
duce and goods to and from market.   Drovers are liable for
the payment of toll for their cattle, and the defendants must
provide them with safe and proper bridges.

The court further instructed the jury, that if the plaintiffs'
loss was occasioned by the imprudence of their servants, they
could not recover.

The opinion of the court was delivered by

MATTOCKS, J.—In this cause, the admission of certain testi-
mony and the charge of the court are first drawn in question, by the
bill of exceptions ; and then the sufficiency of the declaration,

by the motion in arrest.   The plaintiffs offered and were per- WASHINGTON, *March,*
mitted to prove, though objected to, that in 1831 the defend- 1834.
ants made the two northern reaches of said bridge new, as the Richardson &al.
old ones had stood about nine years, and that these new reaches *vs.* W. & R. Turn-
were stronger than those which fell with the cattle.   Had this pike Company.
evidence any tendency to show the bridge insufficient or out of
repair?   One branch of the inquiry, it seems, was the quality
of the timber and workmanship ; the soundness or unsound-
ness of the timber, the length of time it had been erected, and
in effect the life and character of the bridge, and the facts ob-
jected to, were admitted among the rest.   The former practice
before the old county courts, who generally gave very narrow
charges to the jury as to the nature of the evidence, was, for
the counsel to argue by piece-meal, by way of objection upon
the evidence as the cause progressed.   The present practice,
where the main scope of the testimony is pertinent, is, to per-
mit the story of the transaction to be told, without being very
critical by prescribing in advance what shall not be told ; and
the judge, in summing up to the jury, directs their attention to
what points or parts of the testimony are material or impor-
tant ; and if any thing has fallen from the witnesses that is
irrelevant, and may be likely to mislead them, to caution them
against it ; and this practice is found to be more favorable in
arriving at the truth in a case, as a court can judge whether a
fact or circumstance is of any weight, after hearing it in con-
nection with the main story, better than by any previous hypo-
thetical conjectures or statements about it ; being careful always
to keep the incidents in subjection to the principal history.

The law has well classified evidence in general, and the
leading proofs in the trial of every issue ; but the line between
strengthening or confirming circumstances, that have not a di-
rect or certain tendency to prove the issue, and yet are not so
remote as to be inadmissible, is not in all cases distinctly mark-
ed, and from the ever shifting aspects that new cases present
under the same issues, never can be distinctly defined.   Hence
Starkie says, (vol. ii. p. 380,) " It seems to be the province of
a judge, in the exercise of sound discretion, to discriminate be-
tween such facts as are connected with the issue and such as
are merely collateral."   It is believed that in modern practice,
the evidence that is permitted to go to a jury is more natural ;
that it is not governed by rules so artificial as formerly.   In re-

WASHINGTON,
March,
1834.

Richardson &al.
vs.
W. & R. Turn-
pike Company.
lation to the matter of the testimony, the form or mode of conducting the facts to the jury, in general, is unchanged. In 1 Starkie, sec. 7, it is said, that "the great and general rule upon the subject seems to be this—that all facts and circumstances, upon which any reasonable presumption or inference can be founded as to the truth or falsity of the issue, or disputed fact, are admissible in evidence." Under this rule, then, did the evidence afford any reasonable inference that the southern reach of the bridge, which broke, was insufficient, because, in 1831, the defendant built the two northern reaches stronger than that reach that did break? Does it tend to confirm the plaintiff's testimony, or weaken or contradict the defendants? The plaintiff supposes the defendants would not be likely to build a bridge stronger than they believed was necessary, and their making the new part stronger than the old, is evidence that they considered the old, which broke, was not in 1831 when the injury happened, sufficient for the increased wants of the public. This view gains some countenance by what fell from the court in *Holley* vs. *Winooski Turnpike Company*, 1 Aiken, 74, where upon the question whether a railing was necessary, the court say, "It is also worthy of notice that when this bridge was erected by the defendants and accepted by authority, railings were made upon it, and it is to be presumed that they were not added for ornament, but from a supposed necessity.

The testimony was certainly not very pertinent, and so it is to be presumed the court would have instructed the jury, if they had been requested, and at the stage of the trial when it was admitted there might have been no impropriety in rejecting it. But as the defendants afterwards by their testimony went fully into the history of the building of one part of the bridge, to decide that the proof admitted relating to the other part, which it is scarcely possible to believe affected the verdict, should reverse the judgment, would be hypercritical.

As to the charge, the question is, whether in connection with the evidence in the case, and the request of the defendant's counsel, the law was correctly stated which should govern the case. The first position taken by the court was, that the corporation should be liable in the same manner and to the same extent that towns are made liable for damages by the laws of the State. To this no objection has been made. The charge

then submits two subjects of inquiry to the jury ;—first, as to the condition of the bridge at the time of the injury complained of; secondly, as to the prudence or imprudence of the plaintiff. As to the first, the degree of strength to be required for the bridge should depend upon the variety of business and travel done on the road, including droves of cattle; and the test of strength insisted on by the defendants, to wit—an ability to sustain the heaviest loaded teams that travel on the road, was not the only one ; but that to excuse the defendants, the bridge must have been sufficient to sustain a drove of cattle, provided they were passed over with common care and prudence. Here lies the gravamen of the defendants' exceptions. It is not very apparent why the heaviest loaded teams should be considered the criterion, unless it is that they are more ponderous than any other property that ordinarily passes, save droves of cattle, and that therefore, if the bridge was sufficient to sustain such teams, it would be sufficient for all purposes, except for passing droves of cattle. For if it requires a bridge no stronger to pass a drove of cattle than the heaviest loaded team, as this bridge broke down under a drove of cattle, therefore it was not of sufficient strength to sustain the heaviest loaded team. But if more strength in a bridge is required to pass a drove of cattle than a loaded team, as the request to charge supposes, then the request is in substance, and would have been more categorical to have requested the court to charge that the company was not obligated to provide a bridge sufficient to sustain a drove of cattle passed in the ordinary way ; and this is the real question. At and before the passing of this grant, this was a cattle-growing state, and Boston the emporium for beef; thence cattle had been constantly driven from a thousand hills in the interior. And in the tariff of toll we find this clause : " For all horses, mules or neat cattle, led or driven, beside those in teams, one cent each,"—which the company have accepted and acted upon ; and would it not be absurd to suppose that the company are entitled to take toll upon a drove of cattle, and not furnish a passable bridge or road ? And as the grant does not define the number of cattle that may pass the turnpike, and the manner in which they are to be conducted or driven, what but the custom of the country where the road is located, the wants and usages of the community, can be the rule ? This requires the proprietors to do no more in point of

WASHINGTON, March, 1834.

Richardson&al.
vs.
W. & R. Turn-
pike Company.

WASHINGTON,
March,
1834.

Richardson&al.
vs.
W. & R. Turn-
pike Company.

strength and solidity in their roads and bridges, than the towns are bound to do on all public roads of equal importance; and this is what they have undertaken to do in consideration of the tolls. And as to the manner of driving the cattle on to and over the bridge, the jury were properly left to consider whether that was done with common care and prudence; and it is quite clear that this was correct—there was nothing wrong in the charge.

As to the motion in arrest, it is apparent that the most that the defendants can make of it is, that the plaintiffs' case is that of a right or title defectively alleged, which is always aided by verdict. As he declared upon the grant or act of incorporation, relating some part of it, this gave him a right to give the act in evidence; and nothing objectionable appearing in what is related, it shall be intended that all the requisites to a recovery were shown; otherwise the jury, under the direction of the court, would have found a verdict for the defendants.

The judgment of the county court is affirmed.